**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
--------------------------------------------------------------X
CECILIA SANOSSIAN,

                       Plaintiff,

             -against-

JOHN BRENNAN, ALPHONSO DADDINO,
in their individual and official capacities, and
VALLEY STREAM CENTRAL HIGH
SCHOOL DISTRICT,

                  Defendants.
--------------------------------------------------------------X

        **REPORT AND**
        **RECOMMENDATION**

        CV 16-4697 (JMA) (AKT)

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

**I.**    **PRELIMINARY STATEMENT**

     Plaintiff Cecilia Sanossian ("Plaintiff") brings this civil rights action against John

Brennan and Alphonso Daddino (the "Individual Defendants") and the Valley Stream Central

High School District ("the District") (collectively, "Defendants"). The Complaint asserts claims

for (1) hostile work environment in violation of Title VII of the Civil Rights Act of 1964, 42

U.S.C. § 2000e *et seq.* ("Title VII") and the New York State Human Rights Law, N.Y. Exec.

Law § 290 *et seq.* ("NYSHRL"); (2) retaliation in violation of Title VII and the NYSHRL; and

(3) sex-based discrimination in violation of the Equal Protection Clause of the Fourteenth

Amendment, 42 U.S.C. § 1983 ("Section 1983"). *See generally* Plaintiff's Complaint

("Compl.") [DE 1]. On March 10, 2017, the Individual Defendants filed a motion to dismiss

Plaintiff's Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* DE 26. On the

same day, the District filed its own motion to dismiss. *See* DE 31. Judge Azrack referred both

motions to this Court on October 20, 2017, for a Report and Recommendation as to whether the

motions should be granted.  *See* October 20, 2017 Electronic Order.  For the reasons which follow, the Court respectfully recommends to Judge Azrack that (1) the Individual Defendants' motion to dismiss be GRANTED, and (2) the District's motion to dismiss be GRANTED, in part, and DENIED, in part.

## II.    BACKGROUND

### A.    Plaintiff's Complaint

The following factual allegations are taken from Plaintiff's Complaint.  All facts are assumed to be true for purposes of deciding the motion to dismiss and are construed in the light most favorable to Plaintiff as the non-moving party.  *See, e.g.*, *LaFaro v. N.Y. Cardiothoracic Grp.*, 570 F.3d 471, 475 (2d Cir. 2009); *Matthews v. City of N.Y.*, 889 F. Supp. 2d 418, 425 (E.D.N.Y. 2012).

#### 1.  *Plaintiff Returns to Teaching after Chairing the Social Studies Department*

At all times relevant to this litigation, Plaintiff has been a teacher in the Social Studies Department at Valley Stream North High School and has over 20 years of teaching experience.  Compl. ¶¶ 20, 62.  Individual Defendants Daddino and Brennan are male teachers in the Social Studies Department at Valley Stream North.  *Id.* ¶¶ 22-23.  Beginning in or around April 2014, Plaintiff ended a four-year term as Chairperson of the Social Studies Department and returned to a teaching position at the school.  *Id.* ¶¶ 24, 62.  About this time, Plaintiff alleges she "became a target for harassment by the male members of the department formerly under her supervision."  *Id.* ¶ 24.  This alleged harassment consisted of "exclusion from departmental meetings, the removal and theft of personal items from Plaintiff's secured desk, the deliberate misplacement of classroom furniture, personal verbal attacks in the presence of students and staff, the removal of

2

evaluation portfolios and other work related documents, and the destruction [of] a personal lamp."[1] *Id.* ¶ 25.

### 2. *Initial Complaint Against Plaintiff*

In or around February 2015, Plaintiff claims that Defendant Brennan lodged "the first in a series of false complaints alleging acts of sexual harassment." *Id*. ¶ 26. According to Plaintiff, "[t]his initial complaint was investigated by the district and found to have been completely unsubstantiated. However, it was clear that the groundwork for further harassment was being laid." *Id.* Plaintiff asserts that the instances of harassment against her were reported to administrators, including the school's principal; however, none of Plaintiff's male co-workers were disciplined. *Id.* ¶ 27. The Complaint states that the District's "apathetic, hands-off approach heavily contributed to the increasingly hostile work environment at the center of which [Plaintiff] was stranded as a persistent victim." *Id.* ¶ 28. As a result, Plaintiff states she suffered a rapid psychological deterioration which culminated in a prolonged absence beginning on April 20, 2015. She required subsequent treatment with a mental health provider. *Id.* ¶ 29.

### 3. *Subsequent Complaints against Plaintiff*

On May 1, 2015, a subsequent complaint was filed against the Plaintiff, "instigated by [the Individual Defendants], falsely accusing [Plaintiff] of engaging in acts of sexual harassment against her male co-workers." *Id*. ¶ 30. According to Plaintiff, this was "a baseless, preemptive strike calculated to destroy her reputation and, at the same time, divert attention away from their own documented, verifiable acts of harassment." *Id.* The District purportedly investigated the allegations contained in the May 1, 2015 complaint, which included interviews with every

---

[1]    Plaintiff refers to Exhibit A attached to her Complaint which is the charge filed with the Equal Employment Opportunity Commission ("EEOC").

signatory and all available witnesses. *Id.* ¶ 33. The investigation concluded in or around January 2016.[2] *Id.* ¶ 34. The District determined that the allegations of the Individual Defendants "did not rise to the level of sexual harassment" or "were unsubstantiated." *Id.* ¶ 34. "Despite these findings, the district took no disciplinary or remedial measures so as to ensure that [the Individual Defendants], along with the remaining signatories, ceased their campaign of harassment against [Plaintiff], who had previously acted as their supervisor in her capacity as chairperson of the social studies department." *Id.* ¶ 35. Simultaneous with the filing of the May 1, 2015 complaint, the Individual Defendants filed complaints against Plaintiff with the New York State Division of Human Rights ("NYSDHR"). *Id.* ¶ 31.

### 4. *The Press Conference*

On August 24, 2015, in order to "to maximize the damage" from their NYSDHR complaint, the Individual Defendants orchestrated a "highly damaging press conference," which Plaintiff claims constituted "publicized defamation." *Id.* ¶¶ 4, 31-32. "The story ran prominently in [the] New York Post under a glaringly scandalous headline: 'Sex-obsessed teacher won't leave us alone, co-workers say.'" *Id.* ¶ 4. The Complaint alleges that "the effect of the press conference was devastating. . . . [Plaintiff] was constructively forced out of the classroom as a result of extreme psychological and emotional stress." *Id.* ¶ 5. As a result of her distress, Plaintiff states she was "unable to work for more than a year, causing her to sustain extensive financial damages stemming from a loss of income and attendant medical expenses." *Id.* ¶ 32.

---

[2]   A letter purporting to contain the District's findings are attached as Exhibit B to Plaintiff's Complaint.

### 5.  *State Court Defamation Suit and EEOC Charge*

During her leave of absence, Plaintiff undertook two relevant actions.  First, Plaintiff commenced a defamation action against the Individual Defendants in the New York State Supreme Court, County of Nassau, Index No. 607625/2015.[3]  *Id.* ¶ 7, n. 2.  Second, on February 23, 2016, Plaintiff filed a charge with the EEOC alleging that by failing to stem the Individual Defendants' "prolonged campaign of intimidation and harassment against the department's most senior female member – culminating in a vicious act of calculated defamation – the district had acquiesced in the discrimination and created a hostile work environment on the basis of gender."[4]  *Id.* ¶¶ 8, 10.   Plaintiff states that a Right to Sue letter was issued by the EEOC on May 31, 2016, in connection with Charge No. 520-2016-01688.  *Id.* ¶ 10, n. 3.

### 6.  *Plaintiff Returns to Work*

On or about May 11, 2016, Plaintiff was medically cleared to return to the classroom from her leave of absence.  *Id.* ¶¶ 10, 36.  Plaintiff alleges that at this time, the District was "fully aware that [she] had filed a charge with the EEOC alleging a hostile work environment under Title VII of the Civil Rights Act of 1964 and similar state laws."  *Id.* ¶ 10.  Upon her return to school, Plaintiff expressed concern to Assistant Superintendent for Personnel Clifford

---

[3]  Although Plaintiff references the state court action only in a footnote and does not mention when the action commenced, the New York State Unified Court System's Electronic Filing System indicates the initial Verified Complaint was filed on November 24, 2015, and was amended on January 13, 2016.  The initial Verified Complaint and Amended Verified Complaint are also included as Exhibits A and B to the Declaration of Adam I. Kleinberg in support of the Individual Defendants' motion to dismiss.  *See* DE 27-1.

[4]  Exhibit A to Plaintiff's Complaint is her EEOC charge which lists alleged acts of harassment and discrimination.

Odell about the prior actions of her male colleagues.  *Id.* ¶ 36.  In response, Plaintiff was told it was the District's expectation "that all parties will conduct themselves professionally."  *Id.* ¶ 37.

On May 22, 2016, an article appeared in the *New York Post* entitled "Sex-obsessed teacher is back in school."  *Id.* ¶ 39.  The article contained quotations from anonymous sources. *Id.*  According to Plaintiff, "[d]espite the mask of anonymity, there can be no doubt that this article, much as the earlier press conference and news coverage orchestrated on August 24, 2015, was instigated and publicized at the behest of [the Individual Defendants]."  *Id.*

### 7.  *The Desk, Book, and Cell Phone Incidents*

On or about May 25, 2016, Plaintiff noticed two student desks stacked atop one another outside her classroom.  *Id.* ¶ 41.  "Immediately noticing that this arrangement created a physical safety hazard to students and to staff, [Plaintiff] alerted the head custodian to the need for their immediate removal."  *Id.*  According to Plaintiff, the custodian noted that during an earlier tour of the building, the desks had not been there.  *Id.*  Plaintiff enlisted the help of two students to place the desks on the floor, after which custodial staff arrived to remove the desks.  *Id.* ¶ 42. The Complaint avers that at this point, "the staff was confronted by Alphonso Daddino who, in pursuit of his retributive motives, falsely informed them that [Plaintiff] had deliberately placed the desks in the hallway in order to create a hazard.  The custodial staff reported this to district administrators."  *Id.*  Plaintiff asserts that "Daddino's hostile fabrication was a clear attempt to place [Plaintiff] at the center of yet another controversial and improper action."  *Id.* ¶ 43.

That same day, May 25, 2016, Plaintiff states that social studies teacher Kevin Gilchrist, who was also a signatory to the May 1, 2015 complaint, made another complaint against her to Principal James Bolen.  *Id.* ¶ 44.  This complaint asserted that a student in one of Gilchrist's classes had noticed a book on Plaintiff's desk entitled "Works Well with Others."  *Id.*  According

to his complaint, Gilchrist was upset because he believed the book was intended to send a message calculated to intimidate him.  *Id.*  Following this incident, Plaintiff was called to Principal Bolen's office and reprimanded for possessing the book on school grounds.  *Id.* ¶ 45. Principal Bolen instructed Plaintiff to make sure that the book was not openly displayed and kept out of sight of students and staff.  *Id.*

The following day, Plaintiff asked Principal Bolen whether any actions were being taken to investigate the circumstances surrounding the publication of the May 22, 2016 *New York Post* article.  *Id.* ¶ 46.  Plaintiff then requested that an investigation be conducted "to remedy the hostile atmosphere developing, yet again, at [the Individual Defendants'] hands."  *Id.*  In response to this request, and "[c]iting the anonymity of the sources quoted in the article, Principal Bolen informed [Plaintiff] that, after speaking with Superintendent Odell, an investigation would not be conducted."  *Id.* ¶ 47.

On or about June 7, 2017, Kevin Gilchrist "yet again reported [Plaintiff] to district administrators – this time, the complaint centered upon the fact that [Plaintiff's] phone, which she forgot in the joint classroom that she shares with Gilchrist, rang during a student exam."  *Id.* ¶ 48.

### 8.  *Alleged Retaliation*

#### a.  **Counseling Letter**

Plaintiff contends that in addition to ignoring "the brewing chauvinism and harassment to which [Plaintiff] was being increasingly subjected upon her return, the district engaged in several acts of retaliatory conduct."  *Id.* ¶ 49.  According to Plaintiff, the District "was aware that Plaintiff had filed [an EEOC] charge and scheduled a meeting with Plaintiff to discuss the charge on or about June 6, 2016."  *Id.* ¶ 80.  At this meeting, Superintendent Odell presented Plaintiff

with an "accusatory 'counseling letter' replete with stern warnings and detailing actions and other 'recurring' conduct that would result in disciplinary action and termination."[5]  *Id.* ¶ 50. Apparently, these enumerated actions included "the very accusations leveled against [Plaintiff] by [the Individual Defendants] – each of which the district had concluded, in the course of its own investigation, were either unsubstantiated or otherwise non-actionable."  *Id.*  Plaintiff was informed that the "counseling letter" would become a permanent part of her personnel file, and she had the option of either signing or not signing the letter.  *Id.* ¶ 51.  To Plaintiff, "it became readily apparent that the district had embarked on a course of establishing the preliminary groundwork for her termination, in spite of the fact that it already cleared her of all wrongdoing." *Id.*  To Plaintiff's knowledge, neither the Individual Defendants nor any other male teacher in the department involved in the investigations were presented with a counseling letter or subjected to any disciplinary action.  *Id.* ¶ 52.  Plaintiff also claims that at the June 6, 2016 meeting with Superintendent Odell, the District (presumably through Superintendent Odell) proposed that Plaintiff accept a teaching position at Valley Stream Central High School.  *Id.* ¶ 89.  According to Plaintiff, this option was "an expedient exile at best.  Such a transfer would be the absolute equivalent of a disciplinary action as [the Individual Defendants] . . . have insisted upon just such a measure as a remedial measure in response to their false complaints."  *Id.*

### b.  Plaintiff's 2016-17 Teaching Schedule

The District's alleged retaliatory conduct also included the issuance of a burdensome teaching schedule for the following academic year.  Plaintiff asserts that on June 15, 2016, she

---

[5]  A copy of this "counseling letter" is included with the District's motion papers.  *See* Declaration of Lewis R. Silverman, Esq. in Support of Defendants Valley Stream Central High School District's Motion to Dismiss ("Silverman Decl.") [DE 32], Ex. D.  The letter is dated June 7, 2016, and references a meeting on that date.

was provided with a copy of her teaching schedule for the 2016-17 school year. *Id*. ¶ 53. The schedule was "a drastic and unprecedented departure from that which she was assigned during the entirety of her twenty-year (21) [*sic*] career with the district." *Id.* The schedule had Plaintiff teaching four different courses, each to be taught during a single "five teaching period day." *Id.* ¶ 54. Additionally, two of the four courses assigned had never before been in her teaching schedule. *Id.* "This schedule place[d] an excessive and atypical workload on [Plaintiff], as compared to any of her colleagues, in that she [would] need to generate instructional materials for four distinct courses each week, two of which [would] require that she create all of the instructional materials for the first time." *Id.* Plaintiff further alleges that "[t]he assignment of an additional Current Events course, by its very nature, [would] also require that [Plaintiff] create all materials on a weekly basis. Of the eleven (11) teachers in the department, she is one of two teaching a course for the first time, and *none* are teaching two new courses simultaneously." *Id.* ¶ 55 (emphasis in original). According to Plaintiff, she was not assigned either of two sections of a college level geography course that she had taught previously, despite test achievement data from her course showing "her students earned the *highest* average score of any class cohort from any of the four buildings offering the course that year." *Id.* ¶ 56 (emphasis in original).

In addition to the burden of multiple subject class preparations posed by the schedule, Plaintiff contends she "continues to be assigned a course load that results in her NYS Annual Professional Performance Review (evaluation score) being based on the test scores earned by students who are placed on the Regents level track, with a cluster of students who have classified special education learning needs." *Id*. ¶ 57. Such a workload is likely to result in a lower rating for Plaintiff than for her five male colleagues who are rated on the Advanced Placement courses they teach, as well as below her colleagues who teach "Accelerated" honors courses. *Id.*

Despite teaching both Accelerated and AP courses in the past, Plaintiff alleges she has not been assigned any of these courses since her return and the filing of her EEOC charge." *Id.* ¶ 58. Rather, she claims all AP courses were shared between five men in the Social Studies Department during the 2015-16 school year, and that the 2016-17 schedule has the same five men (including the Individual Defendants) teaching every section of the same courses. *Id.*

### c. Director of Instructional Support Position

Finally, Plaintiff alleges the District retaliated against her because she was passed over for a position for which she applied and was qualified. On June 22, 2016, Plaintiff applied for the position of Director of Instructional Support, a district level administrative job. *Id.* ¶ 60. Plaintiff had applied for the same position five years earlier. *Id.* During the 2016 hiring process, Plaintiff was selected to participate in the first two rounds of interviews, at which point she ceased to advance any further. *Id.* ¶ 61. "After two additional rounds of interviews, the district hired a male candidate who had been a teacher for only 12 years, and whose highest level of administrative experience [was] as a department chairperson." *Id.* ¶ 62. According to Plaintiff, another internal candidate -- a female with 20 years' experience, including more than six years' experience as an Assistant Principal and four years as a chairperson -- was also passed over for the position. *Id.*

### B. Relevant Procedural History

On February 23, 2016, Plaintiff filed a charge of discrimination and hostile work environment with the EEOC. Compl. ¶¶ 8, 10. A Right to Sue letter was issued to Plaintiff on May 31, 2016 in connection with Charge No. 520-2016-01688. *Id.* ¶ 10, n. 3. Plaintiff thereafter filed the Complaint in this action on August 23, 2016. *See* DE 1. On December 19, 2016, Plaintiff and Defendants stipulated to the dismissal with prejudice of the NYSHRL claims as to

10

the District and the Title VII claims as to the Individual Defendants.  *See* DE 22.  The Individual

Defendants filed their Rule 12(b)(6) motion to dismiss Plaintiff's Complaint on March 10, 2017.

*See* DE 26.  The District's Rule 12(b)(6) motion to dismiss Plaintiff's Complaint followed on the

same day.  *See* DE 31.  On October 20, 2017, Judge Azrack referred both the Individual

Defendants' and the District's motions to dismiss to this Court for a Report and

Recommendation as to whether they should be granted.  *See* October 20, 2017 Electronic Order.

## III.    STANDARD OF REVIEW

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court must liberally

construe the complaint's claims, accept all factual allegations in the complaint as true, and draw

all reasonable inferences in favor of the plaintiff.  *See Aegis Ins. Servs., Inc. v. 7 World Trade

Co., L.P.*, 737 F.3d 166, 176 (2d Cir. 2013) (quotations and citation omitted); *Grullon v. City of

New Haven*, 720 F.3d 133, 139 (2d Cir. 2013).  The plaintiff must satisfy "a flexible 'plausibility

standard.'"  *Iqbal v. Hasty*, 490 F.3d 143, 157 (2d Cir. 2007), *rev'd on other grounds sub nom.

Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  "[O]nce a claim has been stated adequately, it may be

supported by showing any set of facts consistent with the allegations in the complaint."  *Bell Atl.

Corp. v. Twombly*, 550 U.S. 544, 546 (2007).  The Court, therefore, does not require "heightened

fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its

face."  *Id*. at 570; *see Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt.

LLC*, 595 F.3d 86, 91 (2d Cir. 2010) (holding that a complaint must set forth "a plausible set of

facts sufficient 'to raise a right to relief above the speculative level'") (quoting *Twombly*, 550

U.S. at 555).

The Supreme Court clarified the appropriate pleading standard in *Ashcroft v. Iqbal*, 556

U.S. 662 (2009), in which the court set forth a two-pronged approach to be utilized in analyzing

a motion to dismiss.  District courts are to first "identify [ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679; *see id.* at 678 ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'") (quoting *Twombly*, 550 U.S. at 555)).  Though "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft*, 556 U.S. at 679.  Second, if a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556-57) (internal citations omitted).

In adjudicating a Rule 12(b)(6) motion to dismiss, the Court must limit itself to facts alleged in the complaint, which are accepted as true; to documents attached to the complaint as exhibits or incorporated in the complaint by reference; to matters of which judicial notice may be taken; or to documents whose terms and effect are relied heavily upon in the complaint and, thus, are rendered "integral" to the complaint.  *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002); *see also ASARCO LLC v. Goodwin*, 756 F.3d 191, 198 (2d Cir. 2014).

## IV.    DISCUSSION

### A.    Preliminary Issues

#### 1.    *Consideration of Supporting Declarations/Exhibits*

As an initial matter, the Court points out that the Individual Defendants and the District have both submitted, in addition to memoranda of law, declarations in support of their motions to

dismiss, with exhibits attached containing supplemental materials. *See* DE 27, 32. After

reviewing the Complaint in conjunction with these supplemental materials -- and mindful that

where a party moves pursuant to Rule 12(b)(6) or 12(c) and "matters outside the pleadings are

presented to and not excluded by the court, the motion must be treated as one for summary

judgment under Rule 56" -- the Court concludes that conversion is not required in this case.

FED. R. CIV. P. 12(d); *see Wrap-N-Pack, Inc. v. Eisenberg*, No. 04-cv-4887, 2007 WL 952069, at

*5 (E.D.N.Y. Mar. 29, 2007). Rather, the Court finds that the materials encompassed within

each Defendant's declaration are either (1) incorporated by reference in the Complaint or (2)

consist of documents whose terms and effect are relied upon heavily in the Complaint and, thus,

are rendered "integral" to the Complaint. *See Chambers*, 282 F.3d at 152–53; *see also ASARCO

LLC*, 756 F.3d at 198. As such, the Court exercises its discretion and will consider these

documents in analyzing the motions to dismiss, to the extent such documents bear upon the

proper adjudication of the motions. *See DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d

Cir. 2010) ("In considering a motion to dismiss for failure to state a claim pursuant to Rule

12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to

the complaint as exhibits, and documents incorporated by reference in the complaint. Where a

document is not incorporated by reference, the Court may never[the]less consider it where the

complaint relies heavily upon its terms and effect, thereby rendering the document integral to the

complaint.") (internal citations omitted); *see Acquest Holdings, Inc. v. Travelers Cas. & Sur. Co.

of Am.*, No. 1:16-CV-00212, 2016 WL 6635159, at *4 (W.D.N.Y. Nov. 3, 2016).

## 2. *Exhaustion of Title VII Claims*

While not raised by either the Individual Defendants or the District, the Court finds that a

brief treatment of two threshold issues predominant in Title VII cases is warranted here. Under

Title VII, "a claimant may bring suit in federal court only if she has filed a timely complaint with the EEOC and obtained a right-to-sue letter." *Legnani v. Alitalia Linee Aeree Italiane, S.P.A*, 274 F.3d 683, 686 (2d Cir. 2001) (citing 42 U.S.C. § 2000e–5(e) and (f); 29 U.S.C. § 626(d); *Shah v. N.Y. State Dep't of Civil Serv.,* 168 F.3d 610, 613 (2d Cir.1999); *Malarkey v. Texaco, Inc.,* 983 F.2d 1204, 1208 (2d Cir.1993)).  Accordingly, claims which were not asserted before the EEOC as a general matter may not be pursued in a subsequent federal lawsuit.  *See Bowen-Hooks v. City of New York*, 13 F. Supp. 3d 179, 203 (E.D.N.Y. 2014) (finding where certain "events were not the subject of Plaintiff's . . . EEOC charge and therefore not covered by [Plaintiff's] . . . right-to-sue letter from the EEOC, Plaintiff failed to exhaust her administrative remedies with respect to claims related to those events") (citing *Legnani*, 274 F.3d at 686 ("Exhaustion of administrative remedies through the EEOC is an essential element of the Title VII . . . statutory scheme[ ] and, as such, a precondition to bringing such claims in federal court.")) (internal quotation omitted).

Nevertheless, "claims that were not asserted before the EEOC may be pursued in a subsequent federal court action if they are 'reasonably related' to those that were filed with the agency." *Shah,* 168 F.3d at 614; *see Malarkey,* 983 F.2d at 1208.  Such a claim can include retaliation against an employee for filing a discrimination charge.  *Legnani*, 274 F.3d at 686 (2d Cir. 2001) ("A claim alleging retaliation by an employer against an employee for filing a discrimination charge is one type of claim we have recognized as reasonably related to the underlying discrimination charge.") (internal citations and quotations omitted).

In the instant case, Plaintiff filed her EEOC charge on February 23, 2016.  *See* Compl. ¶¶ 8, 10, Ex. A.  Therefore, claims arising out of events occurring after February 23, 2016 are barred from consideration unless they are reasonably related to those claims that were filed in the

EEOC charge.[6]  In the analysis of Plaintiff's Title VII claims of hostile work environment and retaliation which follow, the Court will consider only those allegations against the District which occurred after February 23, 2016 and which are "reasonably related" to Plaintiff's EEOC charge.

### 3.  *Statute of Limitations Issues*

#### a.  **Title VII**

Prior to bringing a Title VII suit, "[a] plaintiff seeking to bring claims pursuant to Title VII must file a complaint with the EEOC or equivalent state agency within 300 days of the challenged conduct." *Bowen-Hooks*, 13 F. Supp. 3d at 204 (citing 42 U.S.C. § 2000e–5(e)(1)); *see Torres v. N.Y. Methodist Hosp.*, No. 15 CV 1264, 2016 WL 3561705, at *7 (E.D.N.Y. Jan. 7, 2016) (noting Title VII's 300-day limitations period); *Imperato v. Otsego Cty. Sheriff's Dep't*, No. 13 CV 1594, 2016 WL 1466545, at *14 (N.D.N.Y. Apr. 14, 2016); *see also Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 125–26 (2d Cir. 2010) ("[I]n states such as New York that have an agency with the authority to address charges of discriminatory employment practices, the statute of limitations for filing a charge of discrimination with the Equal Employment Opportunity Commission is 300 days.") (alteration, citation, and internal quotations omitted).

In the instant case, Plaintiff filed her EEOC charge on February 23, 2016.  *See* Compl. ¶¶ 8, 10, Ex. A.  Therefore, all Title VII claims based on conduct which occurred before April 13, 2015 -- *i.e.*, 300 days prior to February 23, 2016 -- are time-barred.  While under the continuing violation doctrine "the entire time period of the alleged hostile environment may be

---

[6]  However, as noted below, even though events occurring prior to February 23, 2016 are time-barred for purposes of asserting legal *claims,* such incidents may be considered as "background information" which provides a context for those claims.  *Bowen-Hooks*, 13 F. Supp. 3d at 208.

considered by a court for the purposes of determining liability if an act contributing to the claim

occurs within the filing period, *Bowen-Hooks*, 13 F. Supp. 3d at 205 (internal quotations

omitted), "[t]he continuing violation doctrine only allow[s] the inclusion of action whose

discriminatory character was not apparent at the time [it] occurred." *Emmons v. City Univ. of

New York,* 715 F. Supp. 2d 394, 412 (E.D.N.Y.2010). Notwithstanding the fact that any claims

outside of the 300-day limitations period are untimely, such prior acts may be used "as

background evidence in support of a timely claim." *Imperato*, 2016 WL 1466545, at *14

(quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002)); *see Davidson v.

LaGrange Fire Dist.*, 523 Fed. App'x 838, 839 (2d Cir. 2013) ("Many of the specific

discriminatory acts alleged fall outside of the 300–day statute of limitations. We consider these

acts only as 'background evidence' in evaluating the merits of Davidson's discrimination

claims.") (internal citations omitted); *Bowen-Hooks*, 13 F. Supp. 3d at 208 (considering time-

barred prior acts as "background information providing context for Plaintiff's claims").

Accordingly, the Court may consider as "background evidence" allegations arising from events

which occurred prior to April 13, 2015.

### b. NYSHRL and 42 U.S.C. § 1983

In general, claims brought pursuant to the NYSHRL are governed by a three-year statute

of limitations. *Cincotta v. Hempstead Union Free Sch. Dist.*, No. 15CV4821, 2016 WL

4536873, at *16 (E.D.N.Y. Aug. 30, 2016); *Bowen-Hooks*, 13 F. Supp. 3d at 208 (citing

N.Y.C.P.L.R. § 214(2)); *Sotomayor v. City of N.Y.*, 862 F. Supp. 2d 226, 248 (E.D.N.Y. 2012),

*aff'd*, 713 F.3d 163 (2d Cir. 2013); *Koerner v. State of New York*, 62 N.Y.2d 442, 478 N.Y.S.2d

584, 467 N.E.2d 232, 233–34 (1984) (finding a three-year statute of limitations applicable to

discrimination claims filed under the NYSHRL). In addition, the limitations period is tolled

during the pendency of a complaint before an administrative body. *See Bowen-Hooks*, 13 F. Supp. 3d at 208; *Ugactz v. United Parcel Serv., Inc.*, No. 10-CV-1247, 2013 WL 1232355, at *6 (E.D.N.Y. Mar. 26, 2013); *see also DeNigris v. N.Y.C. Health & Hosps. Corp.*, 861 F. Supp. 2d 185, 192 (S.D.N.Y. 2012) ("Claims brought under the NYSHRL . . . are subject to a three-year statute of limitations, which is tolled for the period between the filing of an EEOC charge and the issuance by the EEOC of a right-to-sue letter."). As such, the scope of this Court's consideration of Plaintiff's NYSHRL claims reaches back three years prior to August 23, 2016—the date Plaintiff filed her Complaint with the Court—plus 98 days for the pendency of her EEOC charge. *See* Compl. ¶¶ 8, 10, n. 3.

Similarly, the statute of limitations for claims brought under § 1983 is three years. *Hogan v. Fischer*, 738 F.3d 509, 517 (2d Cir. 2013); *Paige v. Police Dep't of City of Schenectady*, 264 F.3d 197, 199 n. 2 (2d Cir. 2001). However, the § 1983 limitations period is not tolled during the pendency of EEOC administrative proceedings. *See Bowen-Hooks*, 13 F. Supp. 3d at 209; *Plumey v. New York State*, 389 F. Supp. 2d 491, 497 (S.D.N.Y. 2005) (citing *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 465 (1975), and *Zangrillo v. Fashion Inst. of Tech.*, 601 F. Supp. 1346 (S.D.N.Y. 1985), *aff'd*, 788 F.2d 2 (2d Cir. 1985)). Therefore, the scope of the Court's consideration of Plaintiff's claims brought pursuant to 42 U.S.C. § 1983 is three years prior to August 23, 2016, or August 23, 2013.

## B.    Plaintiff's § 1983 Claims

Title 42 of the United States Code, Section 1983, provides that

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity . . . .

42 U.S.C. § 1983.  Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan,* 443 U.S. 137, 144 n. 3 (1979).  "For claims under Section 1983, a plaintiff must prove that (1) the challenged conduct was attributable at least in part to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed under the Constitution of the United States." *Kohutka v. Town of Hempstead*, 994 F. Supp. 2d 305, 316-17 (E.D.N.Y. 2014) (quoting *Snider v. Dylag*, 188 F.3d 51, 53 (2d Cir.1999) (citation omitted)).  Where a plaintiff raises a Fourteenth Amendment discrimination claim pursuant to § 1983, "[o]nce the color of law requirement is met, a plaintiff's equal protection claim parallels his Title VII [discrimination] claim." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 88 (2d Cir. 2015)

Plaintiff asserts claims against both the Individual Defendants and the District for sex-based discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment, pursuant to 42 U.S.C. § 1983.  *See* Compl. ¶¶ 96-100.  The Court will therefore address Plaintiff's allegations to determine whether she has stated a claim as to each of the Defendants.

### 1.  *Section 1983 Claims against the Individual Defendants*

#### a.  **Legal Standard**

Claims brought against individuals in their personal capacity under § 1983 "ordinarily require[ ] that the [defendant] be a supervisor or have some position of authority or control over the plaintiff." *Kohutka*, 994 F. Supp. 2d at 317 (quoting *Quinn v. Nassau County Police Dep't*, 53 F.Supp.2d 347, 355 (E.D.N.Y.1999)).  "Otherwise, it is difficult to establish that the abusive action was perpetrated 'under color of state law' rather than as an essentially private act . . . . Where the individual defendant is merely a co-worker of the plaintiff, such claims are routinely

dismissed for failure to state a claim." *Kohutka*, 994 F. Supp. 2d at 317; *see Pugliese v. Long Island R.R.,* No. 01-CV-7174, 2006 WL 2689600, at *6 (E.D.N.Y. Sept. 19, 2006) (finding that defendant was "a subordinate, not a supervisor, of [plaintiff], and hence is immune from Plaintiff's § 1983 claims").

### b.  Application to the Complaint

In the instant action, Plaintiff alleges the Individual Defendants were her subordinates prior to April 2014.  *See* Compl. ¶¶ 13, 38, 74.  However, following her return to teaching in April 2014, these same individuals became her "co-workers" and "colleagues."  *See* Compl. ¶¶ 27, 36, 54, 57, 59, 67, 71, 74.  As co-workers and colleagues, Plaintiff contends the Individual Defendants led a "prolonged campaign of intimidation and harassment against the department's most senior female member – culminating in a vicious act of calculated defamation."  *Id.* ¶¶ 8, 10.  Absent from Plaintiff's Complaint, however, is any allegation that the acts of the Individual Defendants were anything other than "essentially private act[s]."[7]  *Kohutka*, 994 F. Supp. 2d at 317.  In the absence of any allegations that the Individual Defendants exerted official control or authority over Plaintiff, the Court respectfully recommends to Judge Azrack that Plaintiff's § 1983 claims as to the Individual Defendants be dismissed.

### 2.  *Section 1983 Claims against the District*

### a.  Legal Standard

In order to state a § 1983 claim against a local government,[8] "a plaintiff must assert that the alleged violations were committed pursuant to an official policy, practice or custom."

---

[7]  Plaintiff appears to concede this point, as she provides no response in her Memorandum in Opposition to the Individual Defendants' argument on this issue.

[8]  "For purposes of § 1983, school districts are considered to be local governments and are subject to similar liability as local governments under *Monell*."  *Kantrowitz v. Uniondale*

*Holland v. The City of New York*, No. 14 Civ. 5517, 2016 WL 3636249, at *9 (S.D.N.Y. June 24, 2016) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)); *see Feliciano v. Cty. of Suffolk*, 419 F. Supp. 2d 302, 312 (E.D.N.Y. 2005). To successfully set forth such a claim, a plaintiff is required to plead three elements: "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Feliciano*, 419 F. Supp. 2d at 312 (quoting *Batista v. Rodriguez,* 702 F.2d 393, 397 (2d Cir. 1983)); *see Simms v. City of N.Y.*, 480 Fed. App'x 627, 629 (2d Cir. 2012). In order to establish the first element, (*i.e.*, the existence of a policy or custom), a plaintiff needs to allege that one of the following exists:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

*Tieman v. City of Newburgh*, No. 13-CV-4178, 2015 WL 1379652, at *13 (S.D.N.Y. Mar. 26, 2015) (quoting *Brandon v. City of New York,* 705 F. Supp. 2d 261, 276-77 (S.D.N.Y. 2010) (citations omitted)).

"Although there is no heightened pleading requirement for complaints alleging municipal liability under § 1983, a complaint does not 'suffice if it tenders naked assertion[s] devoid of further factual enhancement.'" *McLennon v. City of N.Y.*, 171 F. Supp. 3d 69, 94 (E.D.N.Y.

───────────────

Union Free Sch. Dist._, 822 F. Supp. 2d 196, 217 (E.D.N.Y. 2011) (quoting *Booker v. Bd. of Educ._, 238 F. Supp. 2d 469, 475 (N.D.N.Y. 2002) (citations omitted)); *Back v. Hastings On Hudson Union Free Sch. Dist.,* 365 F.3d 107, 128 (2d Cir. 2004) ("Municipalities and other local government bodies, including school districts, are considered 'persons' within the meaning of § 1983.").

2016) (quoting *Green v. City of Mount Vernon*, 96 F. Supp. 3d 263, 301-02 (S.D.N.Y. 2015) (internal citations omitted)).  Consequently, to survive a motion to dismiss a municipal liability claim, "a plaintiff must allege facts tending to support, at least circumstantially, an inference that . . . a municipal policy or custom exists."  *Santos v. New York City*, 847 F. Supp. 2d 573, 576 (S.D.N.Y. 2012) (citing *Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir. 1993)); *see Tieman*, 2015 WL 1379652, at *13 ("Mere allegations of a municipal custom, a practice of tolerating official misconduct, or inadequate training and/or supervision are insufficient to demonstrate the existence of such a custom unless supported by factual details.").

### b.  Application to the Complaint

In the instant action, Plaintiff concedes that of the four theories she may allege to plausibly show that the District had a "policy, practice, or custom" for purposes of *Monell* liability, "there is no official custom or practice implemented by District Defendant that resulted in a deprivation of Plaintiff's rights as protected under Section 1983."  Plaintiff's Memorandum of Law in Opposition to Motion to Dismiss ("Pl.'s Opp'n.") [DE 29] at 16.  Based on the contents of the Complaint, the Court agrees.  Nor does Plaintiff assert that there were any discriminatory actions taken by a District employee responsible for establishing official policy.  Of the two remaining theories of *Monell* liability Plaintiff may allege, Plaintiff argues she has pleaded facts sufficient to show (1) that there existed "a custom or practice that is so pervasive and widespread that the municipality had either actual or constructive knowledge of it," and/or (2) "the municipal defendant failed to train its employees to the extent that the failure rises to the level of deliberate indifference to the constitutional rights of others."  Pl.'s Opp'n. at 15, 16 (quoting and citing *Matusick v. Erie Cty. Water Auth.*, No. 07-CV-489A, 2010 WL 2431077, at *7 (W.D.N.Y. Feb. 22, 2010), *report and recommendation adopted,* No. 07-CV-489A, 2010 WL

2431079 (W.D.N.Y. June 11, 2010)).  The Court will address both theories, beginning with failure to train or supervise.

### i.  Failure to Train or Supervise

"The standards applicable to failure to train and failure to supervise claims are closely related." *Stevens v. City of Bridgeport*, 607 F. Supp. 2d 342, 356 (D. Conn. 2009).  "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *White v. City of New York*, 206 F. Supp. 3d 920, 939 (S.D.N.Y. 2016) (quoting *Connick v, Thompson*, 563 U.S. 51, 61 (2011)).  In order to plead *Monell* liability under a "failure to train or supervise" theory, a local government's failure to train or supervise its employees must "amount to deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." *Connick*, 563 U.S. at 61.  To plausibly show "deliberate indifference," a plaintiff must allege facts giving rise to a plausible inference that: (1) a policymaker knows "to a moral certainty" that her employees will confront a given situation; (2) the situation presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation; and (3) the wrong choice by the municipal employee will frequently cause the deprivation of a citizen's constitutional rights. *Jenkins v. City of New York*, 478 F.3d 76, 94 (2d Cir. 2007).  With regard to this last element, a plaintiff must allege "causation; that is, that the 'state defendants' inadequate supervision actually caused or was the moving force behind the alleged violations.'" *Stevens*, 607 F. Supp. 2d at 356 (quoting *Reynolds v. Giuliani*, 506 F.3d 183, 193 (2d Cir. 2007)).

In the Court's view, Plaintiff has failed to state facts sufficient to support an inference that the District failed to supervise or train Plaintiff's co-workers to such an extent that the

failure rose to the level of "deliberate indifference" to Plaintiff's rights.  Most notably, Plaintiff

falls short of sufficiently alleging causation.   Rather than a lack of training or supervision,

Plaintiff asserts that personal animus was the driving force behind her co-workers' actions.

Specifically, Plaintiff alleges that her co-workers conducted "a vindictive campaign of

retribution . . . for her time as a supervisor and chairperson, and as a female leader whose

supervisory role was far too much an affront to the testosterone driven atmosphere at Valley

Stream North."  Compl. ¶ 67.  This claim of personal animus precludes an inference that a lack

of training or supervision caused or was a motivating factor behind the actions of which Plaintiff

complains.  *See Stevens*, 607 F. Supp. 2d at 356.

### ii.  Widespread Practice Constituting Official Custom

A plaintiff may also allege municipal liability by stating "that a policy maker indirectly

caused the misconduct of a subordinate municipal employee by acquiescing in a longstanding

practice or custom which may fairly be said to represent official policy."  *Miller v. Cty. of

Nassau*, 467 F. Supp. 2d 308, 314 (E.D.N.Y. 2006) (citing *Monell*, 436 U.S. at 690).  In order to

eventually prevail on this theory of municipal liability, however, "a plaintiff must prove that the

custom at issue is permanent and well-settled."  *Tieman*, 2015 WL 1379652, at *16.  Under this

theory of *Monell* liability, "[w]idespread means that [the alleged unconstitutional acts] are

common or prevalent throughout the [government body]; well-settled means that the [alleged

unconstitutional acts] have achieved permanent, or close to permanent, status."  *Davis v. City of

New York*, 228 F. Supp. 2d 327, 346 (S.D.N.Y. 2002), *aff'd*, 75 Fed. App'x 827 (2d Cir. 2003);

*see Tieman*, 2015 WL 1379652, at *16; *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)

("[T]he [Supreme] Court has long recognized that a plaintiff may be able to prove the existence

of a widespread practice that, although not authorized by written law or express municipal

23

policy, is 'so permanent and well settled as to constitute a "custom or usage" with the force of law.'") (quoting *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 167-68 (1970)); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986) ("*Monell* reasoned that recovery from a municipality is limited to acts that are, properly speaking, acts 'of the municipality'—that is, acts which the municipality has officially sanctioned or ordered.").

The Court points out that in many places "Plaintiff's [C]omplaint is light on facts and heavy on conclusory language."[9]  *Grantley v. City of New York*, No. 12 CIV. 8294, 2013 WL 6139688, at *3 (S.D.N.Y. Nov. 21, 2013); *Bryant v. Ciminelli*, 267 F. Supp. 3d 467, 475 (W.D.N.Y.  2017) (finding that despite the somewhat lengthy recitation of the basis of his claims against the City, "plaintiff puts forth no facts alleging a municipal policy").  Examples include Plaintiff's repeated assertions that the complaints filed against her were "false" and "unfounded," that they constituted "publicized defamation," and that they were part of "a campaign of harassment."  *See, e.g.*, Compl. ¶¶ 26, 30-32.  One particular statement is illustrative of this flaw. Plaintiff states that "[h]aving thus been maligned as a female predator and a pariah in the eyes of the public, rather than adopting the required measures to rectify the damage to her reputation and to ease the transition back to the classroom, the district engaged in a discriminatory and retaliatory policy of marginalizing [Plaintiff] and laying the foundation for her termination."  *Id.* ¶ 64.  Yet Plaintiff does not cite any facts describing the manner in which any member of the public perceived her as a pariah, what "required measures" she claims the District should have undertaken to rectify the damage (unspecified) to her reputation, nor how she was marginalized.

---

[9]  The Court in *Grantly* went on to illustrate an example of this conclusory language in stating: "[Plaintiff] alleges that the City has 'tolerated and permitted a pattern of illegal action against citizens, and [has] failed to maintain an unbiased system for review and discipline of these violations by police officers.' (Compl.¶ 20.)."

Similarly unsupported—and undercut by other conclusory assertions—is Plaintiff's contention that "the district's own investigations made abundantly clear [that Plaintiff] was the deliberate target of a false campaign of harassment." *Id*. ¶ 38. Plaintiff does not identify what that "false" campaign was.

Notwithstanding the lack of underlying factual allegations to support many of her conclusions, what is most notable for purposes of *Monell* liability is the absence of allegations regarding the scope of the District's alleged policy. While Plaintiff alleges that "[t]he district's policy evidences a deliberate intent to unfairly and discriminatorily grind [Plaintiff] into obscurity," Compl. ¶ 66 -- without ever explaining what that means as a policy or how the two are connected -- Plaintiff fails to sufficiently state that the discrimination from which she says she suffered was prevalent throughout the District so as to be considered "widespread." *See Davis*, 228 F. Supp. 2d at 346. The closest Plaintiff comes to alleging a "prevalent" policy of discrimination are her conclusory assertions regarding the atmosphere and culture of her workplace:

> 67. It was only in the midst of this type of environment that Cecilia Sanossian, was permitted in the first place to become the target of a vindictive campaign of retribution by her male co-workers – retribution for her time as a supervisor and chairperson, and as a female leader whose supervisory role was far too much an affront to the testosterone driven atmosphere at Valley Stream North.

> 68. And, rather than choosing to rectify the culture of misogyny and hostility that victimized Cecilia Sanossian, the district effectively insulated the masterminds, Brennan and Daddino, from any consequences, and instead, elected to ensure that their female pariah, falsely tarred with the weight of negative publicity and sexual scandal, disappeared. Apparently, this is the price a woman can expect to pay for two decades of exemplary public service.

Compl. ¶¶ 67-68. These generalized theories and suppositions are insufficient to set forth the existence of a widespread custom or practice of tolerating official misconduct without factual

details to support those generalizations -- details which are absent here. *Santos*, 847 F. Supp. 2d at 576.

Moreover, where Plaintiff attempts to impute a discriminatory policy to the District by arguing that that the District was on notice of her complaints, the allegations fall short. Plaintiff argues that she "complained to the school superintendent regarding [her coworkers sexual harassment] claims on numerous occasions." Pl.'s Opp'n. at 16. Several unanswered complaints of mistreatment are insufficient to support an inference that a policy is widespread. *See Pugliese v. Long Island R.R. Co.*, No. 01 CV 7174, 2006 WL 2689600, at *4 (E.D.N.Y. Sept. 19, 2006), *on reconsideration in part sub nom. Pugliese v. Long Island R. Co.*, No. 01 CV 7174, 2007 WL 2493440 (E.D.N.Y. Aug. 29, 2007) ("Contrary to Pugliese's suggestion, evidence that his managers ignored his complaints on three occasions does not establish that such actions were widespread policy throughout the LIRR."); *see also Tieman*, 2015 WL 1379652, at *17 (noting the holding of *Strauss v. City of Chicago*, 760 F.2d 765, 768-69 (7th Cir. 1985) that "even pre-*Twombly* and *Iqbal* . . . allegations of complaints about similar conduct were insufficient to state a claim for a widespread custom under *Monell* because 'the number of complaints filed, without more, indicates nothing,' as '[p]eople may file a complaint for many reasons, or for no reason at all,' and '[t]hat they filed complaints does not indicate that the policies that [the plaintiff] alleges exist do in fact exist'").

As a result, Plaintiff's Complaint is too conclusory to state the elements necessary to show a municipal "policy, practice, or custom" for liability under *Monell*. *See Tieman*, 2015 WL 1379652, at *13 ("Mere allegations of a municipal custom, a practice of tolerating official misconduct, or inadequate training and/or supervision are insufficient to demonstrate the existence of such a custom unless supported by factual details."). Significantly, the Complaint

contains few if any specific factual allegations regarding the scope or pervasiveness of the District's alleged policy. Consequently, the Court cannot infer that the alleged policy is either widespread or "so permanent and well settled as to constitute a 'custom or usage' with the force of law." *City of St. Louis*, 485 U.S. at 127 (quotation omitted). For these reasons, the Court respectfully recommends to Judge Azrack that Plaintiff's § 1983 claims be dismissed as to the District.

### D.    Plaintiff's Hostile Work Environment Claims

Plaintiff asserts a claim for hostile work environment under Title VII as well as the NYSHRL. *See* Compl. ¶¶ 69-77. "The standard for showing a hostile work environment under Title VII, Section 1981, Section 1983, and the New York State Human Rights Law is essentially the same." *Smith v. Town of Hempstead Dep't of Sanitation Sanitary Dist. No. 2*, 798 F. Supp. 2d 443, 451 (E.D.N.Y. 2011) (citing *Schiano v. Quality Payroll Systems, Inc.*, 445 F.3d 597, 609 (2d Cir.2006)).

#### 1. *Legal Standard*

To state a proper claim for hostile work environment under either Title VII or the NYSHRL, Plaintiff needs to plead facts asserting that the conduct she encountered "(1) is objectively severe or pervasive—that is, creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's sex." *Conklin v. Cty. of Suffolk*, 859 F. Supp. 2d 415, 425 (E.D.N.Y. 2012) (quoting *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007)); *Bowen-Hooks*, 13 F. Supp. 3d at 233; *see Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (noting a hostile work environment claim requires a showing that "the workplace is permeated with discriminatory intimidation, ridicule, and insult . . . that is

sufficiently severe or pervasive to alter the conditions of the [individual's] employment and create an abusive working environment") (internal citations omitted).

To determine whether the conduct alleged is sufficiently severe or pervasive, courts look to the following non-exhaustive factors:  "(1) the frequency of the discriminatory conduct; (2) its severity; (3) whether the conduct was physically threatening or humiliating, or a mere offensive utterance; (4) whether the conduct unreasonably interfered with plaintiff's work; and (5) what psychological harm, if any, resulted."  *Sotomayor*, 862 F. Supp. 2d at 260-61 (quoting *Aulicino v. N.Y.C. Dep't of Homeless Servs.*, 580 F.3d 73, 82 (2d Cir. 2009)) (internal quotations and citation omitted); *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 702 F.3d 685, 693-94 (2d Cir. 2012) *Acosta v. City of New York*, No. 11 Civ. 856, 2012 WL 1506954, at *7 (S.D.N.Y. Apr. 26, 2012); *Bowen-Hooks*, 13 F. Supp. 3d at 233.  "Periodic and episodic incidents are not sufficient to establish hostile work environment claims."  *Bowen-Hooks*, 13 F. Supp. 3d at 234; *see Das v. Consol. Sch. Dist. of New Britain*, 369 Fed. App'x 186, 189–90 (2d Cir. 2010) ("Generally, unless an incident of harassment is sufficiently severe, [the] 'incidents [comprising a hostile work environment claim] must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive.'") (quoting *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002)); *Benedith v. Malverne Union Free Sch. Dist.*, 38 F. Supp. 3d 286, 313 (E.D.N.Y. 2014) (recognizing that "single incidents of harassment generally do not create a hostile work environment").  Likewise, "[s]everity is a hallmark of a hostile work environment claim.  Such claims 'are not intended to promote or enforce civility, gentility or even decency.'" *Acosta*, 2012 WL 1506954, at *7 (quoting *Ennis v. Sonitrol Mgmt. Corp.*, No. 02–CV–9070, 2006 WL 177173, at *9 (S.D.N.Y. Jan. 25, 2006)).  "[T]o succeed on a hostile work environment claim against an employer, the plaintiff must show that 'a specific basis exists for imputing the

conduct that created the hostile environment to the employer.'"  *Benedith*, 38 F. Supp. 3d at 313

(quoting *Petrosino v. Bell Atlantic*, 385 F.3d 210, 221 (2d Cir. 2004)); *Boza–Meade v. Rochester*

*Hous. Auth.*, 170 F. Supp. 3d 535, 547 (W.D.N.Y. 2016)

      In conjunction with the foregoing criteria, when analyzing a hostile work environment

claim "the Court must not 'view individual incidents in isolation,' or 'view the record in

piecemeal fashion,' but should consider 'the totality of the circumstances, viewed from the

perspective . . . of a reasonable person in the plaintiff's position, considering all the

circumstances [including] the social context in which particular behavior occurs and is

experienced by its target.'"  *Boza–Meade*, 170 F. Supp. 3d at 547 (quoting *Redd v. N.Y.S. Div. of*

*Parole*, 678 F.3d 166, 176 (2d Cir. 2012)) (internal quotations and citations omitted) (alteration

in original)).

### 2.  *Application to the Plaintiff's Claims*

      Plaintiff has sufficiently pleaded that she subjectively perceived her work environment to

be hostile or abusive.  *See Conklin*, 859 F. Supp. 2d at 425.  The more difficult inquiry is whether

Plaintiff has sufficiently alleged that the conduct of which she complains is objectively severe or

pervasive, and that the conduct is due to her sex.  *See id.*

### a.  **Objectively Severe or Pervasive**

      Notwithstanding the conclusory nature of many of Plaintiff's prior assertions as discussed

previously at some length, the hostile work environment claim requires further attention.  The

allegations made by the Plaintiff in this category are more than episodic.  After filing complaints

with the District and the NYSDHR, Plaintiff states that the Individual Defendants "orchestrated a

large scale press conference to amplify their defamatory accusations on August 24, 2015.  The

story ran prominently in [the] New York Post under a glaringly scandalous headline: 'Sex-

obsessed teacher won't leave us alone, co-workers say.'" Compl. ¶ 4. Plaintiff also alleges that

when she returned to school from medical leave, an article appeared in the *New York Post*

entitled "Sex-obsessed teacher is back in school." *Id.* ¶ 39. The Court finds that the press

conference held by the Individual Defendants and these two *New York Post* articles -- which

presumably refer to the Plaintiff -- created an environment which the Plaintiff subjectively

perceived to be hostile or abusive. *Patane,* 508 F.3d at 113.

     These incidents do not stand alone. Plaintiff has asserted, with sufficient factual support,

the incidents referenced earlier concerning the stacked up student desks, the complaint lodged by

social studies teacher Gilchrist regarding a book on Plaintiff's desk which he believed was

intended as a message to intimidate him, and Gilchrist's subsequent complaint about Plaintiff's

phone going off during a student exam. Plaintiff has also identified, among other things, the

following incidents: Defendants excluding her from departmental meetings; theft of personal

items from her desk; personal verbal attacks against her in the presence of students and staff;

Defendants' removal of evaluation portfolios and other work-related documents; destruction of

her personal lamp; Defendants' making false complaints that she sexually harassed them; an

accusatory counseling letter threatening Plaintiff with disciplinary action and termination;

Defendants' passing over Plaintiff for promotion and giving the position to a less qualified male

candidate; and assigning Plaintiff a burdensome and onerous teaching schedule for the 2016-

2017 school year. Regarding the fourth and fifth factors, namely, whether the conduct interfered

with Plaintiff's ability to work and whether the conduct caused Plaintiff psychological harm, the

Court is satisfied that both of these factors tip in Plaintiff's favor. Plaintiff was out of work from

April 2015 to May 2016 and states that her treatment at the hands of her co-workers and the

District caused her "severe emotional, psychological, and physical distress," *id*. ¶ 32, for which she had to seek "treatment with a mental health provider." *Id*. ¶ 29.

Viewing these incidents in light of the press conference and the two newspaper articles, the Court finds that the five-factor test used to determine whether conduct is objectively severe or pervasive -- *i.e.*, the conduct's frequency, the conduct's severity, whether the conduct is physical in nature, whether the conduct interfered with Plaintiff's work, and whether the conduct caused psychological harm -- tips in Plaintiff's favor. *See Sotomayor*, 862 F. Supp. 2d at 260-61. The Plaintiff is not required to "prove" anything at this stage. The only test is whether she has stated a claim sufficiently to withstand a motion to dismiss.

Looking at "the totality of the circumstances . . . from the perspective . . . of a reasonable person in the plaintiff's position, considering all the circumstances [including] the social context in which particular behavior occurs and is experienced by its target," *Boza–Meade*, 170 F. Supp. 3d at 54 (quotation omitted), the Court finds here that Plaintiff's allegations plausibly suggest that the conduct of which she complains was objectively severe or pervasive.

### b. Based on Plaintiff's Sex

However, "[e]ven if the conduct at issue did rise to the requisite level of severity, 'it is axiomatic that in order to establish a . . . hostile work environment . . . a plaintiff must demonstrate that the conduct occurred because of [her] sex.'" *Conklin*, 859 F. Supp. 2d at 427 (quoting *Alfano*, 294 F.3d at 374). The Court points out that there is no heightened pleading requirement for civil rights complaints alleging gender discrimination. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510, 122 S. Ct. 992, 997, 152 L. Ed. 2d 1 (2002); *Leibowitz v. Cornell Univ.*, 445 F.3d 586, 591 (2d Cir. 2006) (applying *Swierkiewicz* holding to discrimination claims under Title VII and ADEA claims). However, the Supreme Court has

clarified that even against this liberal pleading standard, "conclusory assertions are not entitled to the assumption of truth, and factual allegations must plausibly support the reasonable inference that plaintiffs are entitled to relief." *Reyes v. Fairfield Properties*, 661 F. Supp. 2d 249, 268 (E.D.N.Y. 2009) (citing *Iqbal*, 129 S.Ct. at 1951). Significantly, "the Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context." *Iqbal* at 1954. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'— 'that the pleader is entitled to relief.'" *Id.* at 1950 (quoting FED. R .CIV. P. 8(a)(2)) (alteration in original).

The gravamen of Plaintiff's gender-based hostile work environment claim is that the predominantly male Social Studies Department was "a boy's club," Compl. ¶ 13, and, because of this, she "became the target of a vindictive campaign of retribution by her male co-workers – retribution for her time as a supervisor and chairperson, and as a female leader whose supervisory role was far too much an affront to the testosterone driven atmosphere at Valley Stream North." *Id.* ¶ 67. However, the only allegations Plaintiff makes even tangentially related to gender are (1) that Plaintiff is a woman in a mostly male work environment; (2) that she was at one point in a supervisory role; and (3) that her co-workers filed complaints against her for sexual harassment. Even liberally construed, Plaintiffs' Complaint fails to allege any facts relating to gender, other than a conclusory statement that Defendants retaliated and discriminated against her based on her being female. That statement is insufficient under *Iqbal*. Based on these scant factual allegations, Plaintiff's theory of gender-motivated retribution is conclusory in nature and "not entitled to the assumption of truth." *See Reyes* 661 F. Supp. 2d at 268.

Plaintiff appears to concede that her allegations of mistreatment are, on their face, gender-neutral.  She states that "[a]lthough the incidents that the District identifies may, standing alone, fail to indicate hostility on the basis of Plaintiff's sex, '[t]here is little question that incidents that are facially [ ] neutral may sometimes be used to establish a course of [ ] discrimination' that was motivated by the plaintiff's membership in a protected class."  Pl.'s Opp'n. at 6-7 (quoting *Alfano*, 294 F.3d at 375).  In order to properly consider "facially-neutral" incidents in evaluating a gender-based hostile work environment claim, there must be

> some circumstantial or other basis for inferring that incidents sex-neutral on their face were in fact discriminatory. *Compare Howley,* 217 F.3d at 155-56 (holding that fact-finder could reasonably infer that facially sex-neutral incidents were sex-based where the perpetrator had previously made sexually derogatory statements), *and Williams v. Gen. Motors Corp.,* 187 F.3d 553, 560-64 (6th Cir.1999) (where plaintiff was ostracized on multiple occasions, the use of sex-specific slurs in some incidents justified the inference that all of the incidents were sex-based, allowing the facially neutral incidents to be considered in hostile work environment analysis), *with Bowman v. Shawnee State Univ.,* 220 F.3d 456, 464 (6th Cir.2000) (objectionable but facially sex-neutral behavior by one person could not be considered in hostile work environment claim where there was no evidence of that person's bias).

*Alfano*, 294 F.3d at 378.  The Court notes that "efforts to link a few facially sex-based incidents to a larger group of sex-neutral incidents in order to establish the third prong of a hostile work environment claim have been met with enhanced scrutiny by the courts."  *Pistello v. Bd. of Educ. of Canastota Cent. Sch. Dist.*, No. 516-CV-0212, 2017 WL 1194025, at *5 (N.D.N.Y. Mar. 30, 2017) (citing *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 546 (2d Cir. 2010)).

In scouring the Complaint and the other materials submitted by the Plaintiff, the Court has been unable to uncover a single example of overtly sex-based speech or conduct.  Significantly, Plaintiff never alleges that either the Individual Defendants or other co-workers made any comments regarding her gender.  Nor does the Complaint set forth conduct which

could place in context Plaintiff's otherwise gender-neutral allegations of harassment, thereby characterizing them as gender-motivated.  For these reasons, the Court finds that Plaintiff's Complaint fails to put forward a sufficient basis to imply that either the Individual Defendants or the District were motivated by gender-based animus.

"[T]he Supreme Court has established demanding standards for plaintiffs asserting hostile work environment claims in order to avoid construing Title VII as a 'general civility code.'" *Wilson v. N.Y.P. Holdings, Inc.*, No. 05 CIV.10355, 2009 WL 873206, at *27 (S.D.N.Y. Mar. 31, 2009) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 787–88 (1998)).  Having failed to set forth allegations sufficient to plausibly suggest that the purportedly biased conduct of which Plaintiff complains was motivated by her gender, the Court respectfully recommends to Judge Azrack that Plaintiff's hostile work environment claims be dismissed.

### E.    Plaintiff's Retaliation Claims

Plaintiff also asserts a claim for retaliation under Title VII and the NYSHRL.  *See* Compl. ¶¶ 78-95.  Generally, courts will analyze a plaintiff's retaliation claims brought under Title VII and the NYSHRL simultaneously since the same pleading standards apply with respect to each.  *See Acosta*, 2012 WL 1506954, at *8 (recognizing that claims of retaliation under Title VII, § 1981 and the NYSHRL are "generally analyzed in the same way, with the same standards of liability"); *Awad*, 2014 WL 1814114, at *10; *Bowen-Hooks*, 13 F. Supp. 3d at 220; *Sotomayor*, 862 F. Supp. 2d at 261.  However, the Court must first address Plaintiff's NYSHRL retaliation claims as against the Individual Defendants.

"Unlike Title VII, an individual defendant may be held liable for retaliation under the [NYSHRL] . . . if he 'actually participates in the conduct giving rise to' the plaintiff's retaliation claim."  *Hozer v. Pratt Indus. (USA), Inc.*, No. 10-CV-03874, 2012 WL 2049498, at *1

(E.D.N.Y. June 6, 2012) (quoting *Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 107 n. 10 (2d Cir.2011) (internal quotation marks omitted); *see Schanfield v. Sojitz Corp. of Am.*, 663 F. Supp. 2d 305, 344 (S.D.N.Y. 2009) ("[U]nder the NYSHRL a supervisor can be held individually liable if he actually participates in the conduct giving rise to [the] discrimination.") (internal quotation marks omitted).

In the instant case, Plaintiff alleges three discrete acts of retaliation:  (1) her presentment with the "counseling letter," Compl. ¶¶ 49-51; (2) the composition of her 2016-17 teaching schedule, *id.* ¶¶ 53-59; and (3) the District passing her over for an administrative position. *Id.* ¶¶ 60-62.  It is apparent that these allegations concern official, administrative actions performed by the District.  Plaintiff does not put forward any plausible allegations that the Individual Defendants participated in any of these actions, either directly or indirectly.  Nor is it clear in these circumstances how she could.  For this reason, the Court respectfully recommends to Judge Azrack that Plaintiff's claim for retaliation be dismissed as to the Individual Defendants.  The District, however, is addressed separately.

### 1.  Legal Standard

"Title VII forbids an employer [from] retaliat[ing] against an employee for, *inter alia*, complaining of employment discrimination prohibited by Title VII." *Pothen v. Stony Brook Univ.*, 211 F. Supp. 3d 486, 491 (E.D.N.Y. 2016) (quoting *Kessler v. Westchester Cty. Dep't of Soc. Servs.*, 461 F.3d 199, 205 (2d Cir. 2006)); *Vega*, 801 F.3d at 89; *see also* 42 U.S.C. § 2000e–3(a) (making it unlawful "for an employer to discriminate against any of his employees . . . because [the employee] has opposed any practice made an unlawful employment practice by [Title VII].").  To set forth a *prima facie* case of retaliation, a plaintiff must show that "(1) the

employee was engaged in protected activity;[10] (2) the employer was aware of that activity; (3) the employee suffered an adverse employment action; and (4) there was a causal connection between the protected activity and the adverse employment action." *Pothen*, 211 F. Supp. 3d at 497 (quoting *Gregory v. Daly*, 243 F.3d 687, 700 (2d Cir. 2001)); *Awad*, 2014 WL 1814114, at *10; *Bowen-Hooks*, 13 F. Supp. 3d at 221; *Sotomayor*, 862 F. Supp. 2d at 261; *Geras v. Hempstead Union Free Sch. Dist.*, 149 F. Supp. 3d 300, 330 (E.D.N.Y. 2015).  At the motion to dismiss stage, however, a plaintiff "need not plead a prima facie case of retaliation in the complaint . . . [but] a court may still consider the elements of a prima facie case of retaliation to determine whether plaintiff has given 'fair notice' of his claim."  *Awad*, 2014 WL 1814114, at *10 (quoting *Corbett v. Napolitano*, 897 F. Supp. 2d 96, 111 (E.D.N.Y. 2012)) (citing cases). Rather, "for a retaliation claim to survive a motion for judgment on the pleadings or a motion to dismiss, the plaintiff must plausibly allege that:  '(1) defendants discriminated—or took an adverse employment action—against him, (2) "because" he has opposed any unlawful employment practice.'"  *Vega*, 801 F.3d at 90 (quoting 42 U.S.C. § 2000e–3(a)).

"Unlike in discrimination claims, an adverse employment action 'need not affect the terms and conditions of a plaintiff's employment for purposes of a retaliation claim.'" *Sotomayor*, 862 F. Supp. 2d at 261 (quoting *Fincher v. Depository Trust and Clearing Corp.*, 604 F.3d 712, 720 n. 1 (2d Cir. 2010)); *see Vega*, 801 F.3d at 90.  Instead, "adverse employment action" in the retaliation context includes "any action that 'could well dissuade a reasonable worker from making or supporting a charge of discrimination.'"  *Vega*, 801 F.3d at 90 (quoting

---

[10]  "An employee engages in a 'protected activity' when 'he has opposed any [unlawful discriminatory practice] . . . or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing.'" *Awad*, 2014 WL 1814114, at *11 (quoting 42 U.S.C. § 2000e–3(a)) (alteration in original).

*Burlington Northern & Santa Fe Railway. Co. v. White*, 548 U.S. 53, 57 (2006)); *Pothen*, 211 F. Supp. 3d at 497 (quoting *Feliciano v. City of New York*, No. 14 Civ. 6751, 2015 WL 4393163, at *9 (S.D.N.Y. July 15, 2015)) (alteration in original).  "This definition covers a broader range of conduct than does the adverse-action standard for claims of discrimination under Title VII." *Vega*, 810 F.3d at 90 (citing *Burlington Northern & Santa Fe Railway Co.*, 548 U.S. at 57).

With respect to causation, "a plaintiff must plausibly plead a connection between the act and his engagement in protected activity."  *Vega*, 801 F.3d at 90 (citing 42 U.S.C. § 2000e–3(a)). A plaintiff can accomplish this by pleading facts that indirectly show that the protected activity was taken in close temporal proximity to the adverse employment action.  *See Vega*, 801 F.3d at 90 ("A retaliatory purpose can be shown indirectly by timing: protected activity followed closely in time by adverse employment action.").  Although the Second Circuit has not "drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship," *Pothen*, 211 F. Supp. 3d at 497 (citing *Gorman-Bakos v. Cornell Coop. Extension of Schenectady Cty.*, 252 F.3d 545, 554 (2d Cir. 2001)), generally, the temporal proximity "must be very close."  *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (internal quotation omitted); *see Vega*, 801 F.3d at 90; *Pothen*, 211 F. Supp. 3d at 497.  As a result, "district courts within this Circuit have held that a gap of more than two months between the protected activity and the alleged adverse employment action is too long to establish an inference of causation."  *Pothen*, 211 F. Supp. 3d at 497 (citing *Garrett v. Garden City Hotel, Inc.*, No. 05-CV-0962, 2007 WL 1174891, at *21 (E.D.N.Y. 2007)) (collecting cases); *Geras*, 149 F. Supp. 3d at 331 (recognizing that "[s]ix months between protected activity and discharge is well beyond the time frame for inferring retaliatory causation") (citing *Yarde v. Good Samaritan Hosp.*, 360 F. Supp. 2d 552, 562 (S.D.N.Y. 2005)) (alteration in original).

37

Additionally, "a plaintiff must plausibly allege that the retaliatory action was a 'but-for' cause of the employer's adverse action." *Vega*, 801 F.3d at 90; *see Pothen*, 211 F. Supp. 3d at 497.  As such, "[i]t is not enough that retaliation was a 'substantial' or 'motivating' factor in the employer's decision." *Vega*, 801 F.3d at 90-91.  Nevertheless, "an adverse employment action can have multiple 'but-for' causes, each one of which may be sufficient to support liability." *Geras*, 149 F. Supp. 3d at 333 (citing cases); *see Vega*, 801 F.3d at 91 ("'[B]ut-for' causation does not[, however,] require proof that retaliation was the only cause of the employer's action, but only that the adverse action would not have occurred in the absence of the retaliatory motive.") (internal citation omitted).  In addition, "the but-for causation standard does not alter the plaintiff's ability to demonstrate causation . . . through temporal proximity." *Vega*, 801 F.3d at 91 (internal citation omitted).

### 2.  *Plaintiff's Circumstances*

As noted, Plaintiff alleges three discrete acts of retaliation on the part of the District: (1) her presentment with the "counseling letter," Compl. ¶¶ 49-51; (2) the composition of her 2016-17 teaching schedule, *id.* ¶¶ 53-59; and (3) her being passed over for an administrative position.  *Id.* ¶¶ 60-62.  The Court addresses each of these in turn.

### a.  The Counseling Letter

Plaintiff alleges that the counseling letter, issued by the District and presented by Superintendent Odell on or about June 6, 2016, was retaliation for her filing an EEOC charge on February 23, 2016.  *See* Compl. ¶¶ 49-51.  While a plaintiff is not required to plead a *prima facie* retaliation claim to survive a motion to dismiss, the Court will utilize the *prima facie* elements as guideposts.

Plaintiff has set forth that she was engaged in a "protected activity" for purposes of a Title VII retaliation claim when she filed her February 23, 2016 EEOC charge. *See Awad*, 2014 WL 1814114, at *11 ("An employee engages in a 'protected activity' when he . . . has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing.") (internal quotation marks omitted). Further, the Court finds that a plausible inference can be drawn from the Complaint that "Defendant district was aware that Plaintiff had filed [the EEOC] charge." Compl. ¶ 80. Plaintiff has also sufficiently alleged that the counseling letter was, for purposes of a Title VII retaliation claim, an "adverse employment action," since it "could . . . have dissuaded a reasonable employee in [the plaintiff's] position from complaining of unlawful discrimination." *Pothen*, 211 F. Supp. 3d at 497 (internal quotation omitted). However, Plaintiff "must plausibly plead a connection between the act and h[er] engagement in protected activity." *Vega*, 801 F.3d at 90 (citing 42 U.S.C. § 2000e–3(a)). With respect to the counseling letter, Plaintiff's retaliation claim falls short.

Whether through a temporal or "but for" lens, Plaintiff has failed to plead facts sufficient to plausibly suggest that the counseling letter of June 6, 2016 shares a causal connection with Plaintiff's EEOC charge of February 23, 2016. In order to show causation through temporal proximity, the relevant case law makes clear that such a nexus must be very close in time to establish an inference of discrimination. *See Breeden*, 532 U.S. at 273; *Vega*, 801 F.3d at 90; *Pothen*, 211 F. Supp. 3d at 497. The counseling letter was presented to Plaintiff approximately three and a half months after she filed her EEOC charge. *See* Compl. ¶¶ 8, 50. While Plaintiff relies on S*uggs v. Port Auth. of New York & New Jersey*, No. 97 CIV. 4026, 1999 WL 269905, at *6 (S.D.N.Y. May 4, 1999) to support her position that sufficient temporal proximity exists between her EEOC charge and the issuance of the counseling letter, *see* Pl.'s Opp'n. at 11-12, at

least one court has disagreed with *Suggs*'s holding that six months constitutes sufficient temporal proximity to establish a causal connection.  *See Carr v. Westlb Admin., Inc*., 171 F. Supp. 2d 302, 310 (S.D.N.Y. 2001) ("With all due respect to the court in *Suggs,* this court disagrees with *Suggs*'s holding that a period of six months constitutes, per se, a short enough period of time to imply causation.").  Plaintiff here has not established sufficient temporal proximity to meet her burden to connect the counseling letter to her engagement in protected activity.

Plaintiff is also unable to meet her burden through a necessary "but for" analysis.  "As part of the causation analysis, a plaintiff must show that the retaliatory action was a 'but-for' cause of the employer's adverse action."  *Vega*, 801 F.3d at 90.  The Complaint and the documents incorporated in it portray an ongoing interpersonal dispute between Plaintiff and the Individual Defendants, among others.  The dispute pre-dates the EEOC charge by almost two years -- when Plaintiff stepped down from her position as Chairperson of the Social Studies Department.  *See* Compl. ¶ 24.  In this context, Plaintiff is unable to show that she would not have been presented with the counseling letter but for her EEOC charge.  Indeed, the terms of the counseling letter lay out multiple purported reason for its issuance.  Given these circumstances, it is plausible that Plaintiff would have been issued the letter even if she had not filed her EEOC charge.  For this reason, Plaintiff has failed to set forth a sufficient causal connection to successfully plead a Title VII retaliation claim with respect to the counseling letter.   As such, the Court respectfully recommends to Judge Azrack that the District's motion to dismiss be GRANTED as to that portion of the retaliation claim alleging retaliation on the basis of the counseling letter issued by the District and presented by Superintendent Odell.

### b. Plaintiff's 2016-17 Teaching Schedule

Plaintiff's assertion of an unprecedented and disproportionately burdensome 2016-17 teaching schedule may constitute an "adverse employment action" for purposes of her Title VII retaliation claim.  The Court notes that in the context of discrimination (as distinct from retaliation) claims brought under Title VII, the NYSHRL, § 1981, and § 1983, "[t]he assignment of a heavier teaching load to [a] plaintiff for the [2014-2015 academic year] does not constitute an adverse employment action."  *Browne v. City Univ. of N.Y.,* 419 F. Supp. 2d 315, 333 (E.D.N.Y. 2005); *see Sotomayor*, 862 F. Supp. 2d at 255 (assignment of heavier teaching load during a given semester did not constitute an adverse employment action); *but see Wilson v. Family Dollar Stores of N.Y., Inc*., No. CIV A CV-06-639, 2008 WL 4426957, at *8 (E.D.N.Y. Sept. 25, 2008), *aff'd sub nom. Wilson v. Family Dollar Stores*, 374 Fed. App'x 156 (2d Cir. 2010) (finding that allegations of being subjected to a heavier workload cannot constitute an adverse employment action unless the work assignments were "disproportionately burdensome"); *Edwards v. Huntington Union Free Sch. Dist*., 957 F. Supp. 2d 203, 211 (E.D.N.Y. 2013) ("[T]he 'assignment of a disproportionately heavy workload' can constitute an adverse employment action.") (quoting *Grana v. Potter*, No. 06–CV–1173, 2009 WL 425913, at *12 (E.D.N.Y. Feb. 19, 2009)); *Bowen-Hooks*, 13 F. Supp. 3d at 213 (noting that a "'[d]isproportionately heavy workload could perhaps be an adverse action, if the additional work significantly changed the employee's responsibilities so as to diminish that worker's role or status'") (quoting *Lopez v. Flight Servs. & Sys., Inc*., 881 F. Supp. 2d 431, 441 (W.D.N.Y. 2012)).

Plaintiff can sufficiently plead a claim for retaliation with respect to her 2016-17 teaching schedule if she is able to plausibly show "a connection between the [adverse] act and [her]

engagement in protected activity." *Vega*, 801 F.3d at 90 (citing 42 U.S.C. § 2000e–3(a)).  The Court finds that Plaintiff has done so here.  While the length of time between the EEOC charge and the issuance of Plaintiff's 2016-17 course load is similar to that of the EEOC charge and the issuance of the counseling letter, the Court notes that teaching schedules are created and distributed at certain predetermined times.  Plaintiff received her 2016-17 teaching schedule on June 15, 2016 at the usual predesignated time, and in advance of the next academic year.  Given the predetermined timing of the issuance of the next academic year's teaching schedules, the lack of temporal proximity between the EEOC charge and Plaintiff's receipt of her schedule does not prove fatal to her retaliation claim.  And with respect to a "but for" causal connection, the Court finds that the Complaint sufficiently states one.  Accepting Plaintiff's factual allegations as true, the "unprecedented and unduly burdensome nature" of this schedule as described, *see* Compl. ¶¶ 53-59, sufficiently asserts facts to plausibly suggest Plaintiff would not have been issued the schedule but for her EEOC charge.   For these reasons, the Court respectfully recommends to Judge Azrack that the District's motion to dismiss that portion of the retaliation claim alleging the imposition of an "unprecedented and unduly burdensome" teaching schedule for the 2016 2017 school year be DENIED.

### c.  The Director of Instructional Support Position

Lastly, Plaintiff alleges the District retaliated against her for her EEOC charge by passing her over for the Director of Instructional Support job, a position for which she interviewed and was qualified.[11]  *See* Compl. ¶¶ 60-62.  In order to adequately plead her failure to secure the

---

[11]   The Court notes that Plaintiff does not attempt to plead a claim of discriminatory "failure to promote" under Title VII.  Thus, the Court here limits its treatment of Plaintiff's allegation that she was qualified but not selected for the Director of Instructional Support position to a Title VII retaliation analysis.

Director of Instructional Support position as a retaliation claim, Plaintiff needs to allege facts sufficient to plausibly suggest that (1) her failure to secure the position constituted an adverse employment action, and (2) she failed to secure the position *because of* her EEOC charge.  *See Vega*, 801 F.3d at 90.  Even assuming that her failure to secure the position could be considered an adverse employment action, Plaintiff has not pleaded facts sufficient to plausibly suggest that she would have been hired for the position "but for" her EEOC charge.  Indeed, Plaintiff notes this was her "second time applying for the position, the first having been approximately five years ago."  Compl. ¶ 60.  She also alleges that "[a]nother internal candidate, a female with 20 years' experience including more than six years' experience as an Assistant Principal, and another four years as a chairperson, was also passed over for the position."  *Id.* ¶ 62.  These two allegations suggest, respectively, that (1) this was not the first time Plaintiff applied for the position; (2) there may have been some shortcoming in Plaintiff's application which existed five years prior (predating the EEOC charge) and which shortcoming was still present during her second attempt at the position; and (3) the level of competition for the position was high. Inferences like these, combined with the lack of other factual allegations to support her claim, do not show that Plaintiff would have been hired for the Director of Instructional Support position "but for" the fact that she filed an EEOC charge almost four months prior.

Based on this analysis, the Court respectfully recommends to Judge Azrack that  the portion of the retaliation claim based on the District's choice not to select the Plaintiff for the Director of Instructional Support position should be DISMISSED.

**V.   CONCLUSION**

For the foregoing reasons, the Court respectfully recommends to Judge Azrack that:  (1) the Individual Defendants' motion to dismiss the Complaint be GRANTED in its entirety;

(2) the District's motion to dismiss the Title VII/Section 1983 equal protection hostile work environment claim be GRANTED; (3) the District's motion to dismiss the *Monell* claim be GRANTED; (5) the District's motion to dismiss those portions of the retaliation claims based on the counseling letter and the District's selection of another candidate as the Director of Instructional Support be GRANTED; and (6) the District's motion to dismiss that portion of the retaliation claim alleging the imposition of an "unprecedented and unduly burdensome" teaching schedule for the 2016-2017 school year be DENIED.

## VI.    OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. *See also* FED. R. CIV. P. 6(a), (e). Such objections by an attorney of record shall be filed with the Clerk of the Court via ECF. **A courtesy copy of any objections filed is to be sent to the Chambers of the Honorable Joan M. Azrack, and to the Chambers of the undersigned. Any requests for an extension of time for filing objections must be directed to Judge Azrack prior to the expiration of the fourteen (14) day period for filing objections**. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Beverly v. Walker*, 118 F.3d 900, 901 (2d Cir. 1997), *cert. denied*, 522 U.S. 883 (1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

**SO ORDERED**.

Dated: Central Islip, New York
       February 20, 2018

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge